

# IN THE
# TENTH COURT OF APPEALS

### No. 10-17-00316-CV

**CORSICANA INDUSTRIAL FOUNDATION, INC.**
**GANDER MOUNTAIN COMPANY AND**
**JP MORGAN CHASE BANK, N.A.,**

**Appellants**

**v.**

**CITY OF CORSICANA AND**
**NAVARRO COUNTY,**

**Appellees**

**From the 13th District Court**
**Navarro County, Texas**
**Trial Court No. D17-26224-CV**

## DISSENT

This case involves an argument about the validity and interpretation of a written contract in which sales taxes from a business development were to be paid to the developer to be used for loan repayments. The dispute was resolved via a motion for summary judgment. There is at least a fact question of whether the government entities, the City of Corsicana and Navarro County, received what they contracted for with the

Corsicana Industrial Foundation, Inc., the developer, for the benefit of a third party, the lender, Chase Bank. All parties enjoyed the benefits of the contract for 10 years with Gander Mountain in operation as the business tenant anchoring the development and continue to do so with the other retail shops that the development drew in as it was designed to do and which was the purpose of the design.

Gander Mountain, the anchor tenant in the development, went bankrupt. It appears that the City and County no longer like the deal they made because they failed to have a provision in the contract for this contingency. It may now look like a bad deal, but they had no complaints for the first decade. The question, both factual and legal, is what is the impact of the bankruptcy and thus cessation of business of the anchor tenant ten years into the operation of the agreement. During negotiations, the parties had specifically removed the clause from the written contract that would have yielded the result that is now judicially written back into the contract. I do not believe the law or the procedural posture of the case allows that result.

The Court also determines that the constitutionally necessary control was not maintained over the use of the tax revenue. But the City and County maintained absolute control over the use of the funds by making sure they were used only for a single purpose, repayment of the debt incurred to build the building that draws the businesses which generate and pay the sales tax. I cannot imagine how the City and County could have

established any more stringent control over the use of the funds.[1]

The Court has declared the contract was unconstitutional from its inception. Based on this Court's holding, the City and County should have sued for this declaration immediately upon completion of the building or occupancy by Gander Mountain before the first cent of tax revenue was paid over to the Foundation. And based on the Court's holding, the City and County never owed anything; thus, the taxpayers will be expecting to recover the funds illegally turned over to the Foundation from those officials responsible for authorizing those illegal payments.

From a policy perspective, this holding will be the death knell of this type of economic development agreement. No creditor will make a loan in reliance on a dedication of sales tax to repay the loan if the taxing entities can have the contract determined to be unconstitutional after payments have been made for 10 years. There are many who criticize the government for trying to pick winners and losers in the business place by choosing to use tax incentives. They will like the result. But I do not think the law or the procedural posture of this case supports it.

---

[1] I note that unlike many economic development incentives that provide for ad valorum tax abatements, this agreement was different. The genius of the agreements here is that if there are no sales taxes generated, there are no incentives paid. The incentive and payment is, thus, self-regulating, easy to calculate, easy to confirm compliance, and easy to enforce if violated. Unlike the ad valorum abatement incentives that are tied to employment levels, payroll, or other metrics, the City and County continue to enjoy the substantial benefits for which they contracted, including the collection of ad valorum taxes on the entire infrastructure even though part of it is vacant and, thus, not generating any sales taxes (so it is also not generating an incentive payment). See the affidavits quoted on pages 17-18 of the Court's opinion.

Accordingly, I respectfully dissent to the Court's opinion and judgment.


TOM GRAY
Chief Justice

Dissent delivered and filed January 11, 2024

